**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| General Growth Properties, Inc., et al., | : | Case No. 09-11977 (ALG) |
| Reorganized Debtors. | : | (Jointly Administered) |
| MOELIS & COMPANY LLC, | : | |
| Plaintiff, | : | Adv. Proc. No. 10-04273 (ALG) |
| -against- | : | |
| WILMINGTON TRUST FSB, | : | |
| Defendant. | : | |

**ORDER DENYING MOTION TO REMAND,**
**OR IN THE ALTERNATIVE, FOR ABSTENTION**

A P P E A R A N C E S:

LATHAM & WATKINS LLP
*Attorneys for Moelis & Company LLC*
By: Blair G. Connelly
Michael J. Riela
John D. Castiglione
885 Third Avenue
New York, NY

FOLEY & LARDNER LLP
*Attorneys for Wilmington Trust FSB*
By: Douglas E. Spelfogel
Derek L. Wright
90 Park Avenue
New York, NY 10005
By: John A. Simon
Adam J. Wienner
500 Woodward Avenue, Suite 2700
Detroit, MI 48226

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion of Plaintiff Moelis & Company LLC ("Moelis") to remand or abstain in the above-captioned adversary proceeding (the "Adversary Proceeding"). Defendant Wilmington Trust FSB (the "Indenture Trustee") opposes the Motion, asserting that this Court has subject matter jurisdiction and that neither abstention nor equitable remand is appropriate. For the reasons set forth below, this Court finds that it has jurisdiction and that neither abstention nor remand is warranted.

**FACTS**

The relevant facts are largely undisputed. On April 16, 2009, the debtors in the above-captioned chapter 11 cases (the "Chapter 11 Cases") filed their voluntary petitions. Their debt included $1,550 million in 3.98% Exchangeable Senior Notes due 2027 issued by GGP Limited Partnership, one of the Debtors (the "Notes"). Defendant is the successor indenture trustee under the indenture governing the Notes (the "Indenture"). At the direction of holders of a majority of the outstanding principal amount of the Notes at the time (the "Consortium"), the Indenture Trustee hired Moelis to serve as its financial advisor in connection with the Reorganized Debtors' chapter 11 proceedings. In an engagement letter (the "Engagement Letter"), dated as of September 1, 2009, by and among the Indenture Trustee, Brown Rudnick LLP, as counsel, and the Consortium, the Indenture Trustee agreed to pay Moelis a $9 million restructuring fee plus its expenses on certain conditions, including completion of a "qualifying restructuring" of the Notes.

The parties agree that a qualifying restructuring, as defined in the Engagement Letter, occurred on October 21, 2010, when a plan of reorganization for the relevant Debtors was confirmed (the "Plan"). The Plan became effective on November 9, 2010 (the "Effective Date")

(Dkt. No. 6232). Section 4.10 of the Plan provided that "Class 4.10 [consisting of claims based on the Notes] is *unimpaired* by the Plan," and that "[o]n the Effective Date, the Allowed Exchangeable Note Claims shall (A)(i) be cured and reinstated in accordance with section 1124 of the Bankruptcy Code." *See Plan*, § 4.10 (*emphasis added*). In accordance with its obligation under the Plan to cure and reinstate the claims of the Noteholders, the Reorganized Debtors distributed certain monies to the Indenture Trustee (the "Note Proceeds"), which is also the disbursing agent for Class 4.10 under the Plan, so as cure all defaults under the Notes and pay damages, as required by § 1124 of the Bankruptcy Code.

Moelis asserts that receipt of the Note Proceeds by the Indenture Trustee triggered Moelis' immediate right to payment by the Indenture Trustee of its entire restructuring fee, as well as expenses. *See Plaintiff's Memorandum of Law* at pg. 1 (Dkt. No. 5). The Indenture Trustee has not paid Moelis' fee or expenses and disputes its obligation to do so. Instead of paying Moelis from the Note Proceeds, the Indenture Trustee has asserted that, "[c]onsistent with the provisions of the Indenture and the Engagement Letter absolving Wilmington Trust for any personal liability for Moelis' claimed fees and expenses, and also with the plan provisions that holders of the Exchangeable Notes are 'unimpaired' . . . the Indenture, Engagement Letter, and plan process contemplate that Moelis' fees and expenses will be sought in the Bankruptcy Court."[1] *Defendant's Opposition* at pg. 4 (Dkt. No. 8). Instead of paying Moelis from the Note Proceeds, the Indenture Trustee has asserted the right, under § 7.08 of the Indenture and § 2.6 of the Plan, to assert a "charging lien" over a portion of the Note Proceeds sufficient to cover

[1] Section 4.10(b) of the Plan provides that, "on the Effective Date, subjection to Section 2.6 of the Plan, the Plan Debtors shall pay in Cash any related outstanding reasonable Indenture Trustee Fee Claim." Section 2.6 of the Plan also provides that "all Indenture Trustee Fee Claims . . . shall be paid in Cash on the Effective Date by the Plan Debtors as provided in Article 4." The term "Indenture Trustee Fee Claim" is defined in § 1.111 of the Plan as "a Claim of any Indenture Trustee for the reimbursement of its reasonable accrued and unpaid fees and expenses, including reasonable attorneys' fees, under the applicable Indenture . . . only to the extent allowable under the applicable Indenture."

Moelis' fee and expenses, as well as the fees and expenses of Brown, Rudnick.[2] The Indenture Trustee has apparently disbursed the remainder of the Note Proceeds to the Noteholders.

In an attempt to enforce its alleged right to a $9 million fee plus expenses arising under the Engagement Letter, on November 17, 2010, Moelis commenced a civil action in the New York State Supreme Court (the "State Court") captioned, *Moelis & Company LLC v. Wilmington Trust FSB* (the "State Court Action"). The following day, the Indenture Trustee filed its notice of removal alleging that the State Court Action arises in and/or is related to the Chapter 11 Cases pending before this Court. On December 6, 2010, Moelis filed its motion to remand and/or abstain, contending that the State Court Action concerns only the relative rights of non-debtors and is a simple, state-law claim for breach of contract that has no bearing on these cases because the Plan has been consummated and the Reorganized Debtors have distributed the Note Proceeds. Moelis also claims that there is no connection between the State Court Action and the Chapter 11 Cases because the Indenture Trustee "has contractually bound itself to pay Moelis' fee from the Note proceeds, independent of whether Wilmington Trust may ultimately recoup those amounts" from the Debtors. *Plaintiff's Memorandum of Law* at pg. 7. On the basis of the foregoing, Moelis contends that the State Court Action should be remanded because it is not a core matter "arising under" the Code, nor does it "arise in" or "relate to" these bankruptcy cases.

In contrast, the Indenture Trustee claims that the Motion "wholly ignores the close and inextricable nexus between Moelis' claim for fees and expenses" and the Chapter 11 Cases. *Defendant's Opposition* at ¶ 2. The Indenture Trustee argues that the Engagement Letter explicitly provides, in numerous places, that the Indenture Trustee shall not "have any personal

---

[2] Section 1.31 of the Plan defines a "Charging Lien" as "any right of any Indenture Trustee to a Lien upon, or other priority with respect to, distributions to be made to holders of Note Claims for payment of any Indenture Trustee Fee Claims." Section 2.6 provides that "[a]n Indenture Trustee's Charging Lien will be discharged solely upon payment in full of the Indenture Trustee Fee Claims."

obligations or liability" for the payment of Moelis' fees or expenses. *See e.g., Engagement Letter* at ¶ 13. Given that Moelis agreed that the Indenture Trustee would not have any personal liability for Moelis' fees and expenses, it is contended that the Note Proceeds are the only possible source of funds for payment.

**DISCUSSION**

1. Core Jurisdiction

Despite Moelis' contentions, this is not a simple, State law contractual dispute involving only non-debtor parties, where "[n]othing about the case will affect any bankruptcy proceedings before this Court." *Plaintiff's Memorandum of Law* at pg. 1. On the contrary, this is a case in which (i) Moelis entered into an agreement to provide services in connection with the Chapter 11 Cases and agreed to look for payment of its fee and expenses exclusively from the Note Proceeds and not to impose personal liability on the Indenture Trustee; (ii) the distribution to Noteholders under the Plan is being held up, in part, because of Moelis' demand to be paid; (iii) the Plan prohibits any party from interfering with its implementation; (iv) the Plan actually provides for payment of the reasonable professional fees of the Indenture Trustee, including its advisors; and (v) there are ongoing proceedings in this Court (in which Moelis is participating) for a determination of the reasonableness of Moelis' fee and expenses and to provide for payment out of proceeds that the Debtors have escrowed for this purpose. This case thus raises the question whether Moelis can nevertheless use State court proceedings to force the Indenture Trustee to divert funds from the Noteholders to pay its presumptively unreasonable fees and expenses. Under the facts and circumstances of this dispute, the question whether it can do so is one for this Court to decide.

The jurisdiction of the bankruptcy court derives from 28 U.S.C. § 1334, which provides that, subject to certain specified limitations, "the district courts shall have . . . original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Section 157 of the Bankruptcy Code then distinguishes between core and non-core proceedings and sets forth a non-exclusive list of matters that fall within a bankruptcy court's core jurisdiction, such as matters concerning the administration of the bankruptcy estate and the confirmation of plans of reorganization. 28 U.S.C. § 157(b)(2); s*ee In re Chateaugay Corp.*, 193 B.R. 669, 677 (S.D.N.Y. 1996); *In re Galgano*, 358 B.R. 90, 95 (Bankr. S.D.N.Y. 2009). Core matters include those that "arise under" or "arise in" bankruptcy cases. *See Lothian Cassidy LLC v. Ransom*, 428 B.R. 555, 559 (E.D.N.Y. 2010), citing *Winstar Holdings, LLC v. Blackstone Group L.P.*, No. 07-4634, 2007 WL 4323003, at *2 (S.D.N.Y. Dec. 10, 2007); *Weaver v. Texas Capital Bank*, 410 B.R. 453, 456 (N.D. Tex. 2009).

Moelis is correct that the State Court Action does not "arise under" the Bankruptcy Code.[3] However, its further argument—that administration of the estate and implementation of the Plan are not impacted by the relief sought and that the dispute does not "arise in" the Chapter 11 Cases—is wholly specious. The State Court Action is a proceeding falling within this Court's core jurisdiction because it implicates the "enforcement or construction of a bankruptcy court order," in this case the confirmation order. A bankruptcy court always has jurisdiction to interpret its own orders. *See Travelers Indem. Co. v. Bailey*, 129 S.Ct. 2195, 2205 (2009); *In re Portrait Corp.*, 406 B.R. 637, 641 (Bankr. S.D.N.Y. 2009). It does not matter that the State Court Action is purportedly between two non-debtors, or that the Chapter 11 Cases have been confirmed. *See Luan Inv. S.E. v. Franklin 145 Corp.* (*In re Petrie Retail, Inc.),* 304 F.3d 223,

[3] A cause of action is one "arising under" title 11 when such action is one created by title 11, such as preference or fraudulent transfer actions. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 325 n.13 (1995); *see In re Housecraft Indus. USA, Inc.*, 310 F.3d 64, 68 (2d Cir. 2002).

229-30 (2d Cir. 2002) (core jurisdiction exists in a dispute between non-debtors over interpretation of the bankruptcy court's sale order); *In re Portrait Corp.*, 406 B.R. at 641; *see also Lothian Cassidy* LLC, 428 B.R. at 560.

In the State Court Action, Moelis seeks to compel the Indenture Trustee to pay its fee and expenses from the proceeds due to Noteholders under the Plan, even though the Plan on its face requires that the Noteholders be unimpaired and provides for payment of only the Indenture Trustee's reasonable fees and expenses. Moelis seeks payment from the Note Proceeds despite language in the confirmation order enjoining all parties in interest from obstructing distributions under the Plan. *See Confirmation Order* at ¶ 20 (Dkt. No. 6240).[4] The relief that Moelis seeks in the State Court Action has already had the effect of interfering with distributions under the Plan, as the Indenture Trustee has withheld $15,842,953.44 in proceeds due the Noteholders to protect itself from the possibility of liability to Moelis, Brown Rudnick and related liabilities under the Engagement Letter (the "Withheld Funds"). Since Moelis seeks to compel the Indenture Trustee to distribute the Note Proceeds in a manner not in accordance with the terms of the Plan, the dispute requires the interpretation of the Plan, and this Court has jurisdiction to decide it.

This Court has already held two lengthy hearings, on January 26, 2011 and February 8, 2011, relating to the reasonableness of the fees charged by Moelis and Brown Rudnick, and there is no dispute that the <u>reasonable</u> fees of Moelis and Brown Rudnick are payable under the Plan by the Debtors. As noted above, the Plan expressly provided for the payment of reasonable professional fees to the Indenture Trustee, and it preserved the Indenture Trustee's so-called "charging lien" for payment of such "Indenture Trustee Fee Claims." Moelis' lawsuit raises the

---

[4] ¶ 20 of the confirmation order provides "Pursuant to Section 11.6 of the Plan, upon entry of this Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation and Consummation of the Plan."

further question whether its unreasonable fees can be paid from the Note Proceeds. The Court expresses no opinion on this issue at this stage of the dispute, but under these circumstances there is no basis for the contention that Moelis' lawsuit against the Indenture Trustee does not affect the implementation of the Plan.

Moelis makes the further argument that the Indenture Trustee appropriately withheld part of the Noteholders' distribution for potential payment of its unreasonable fees and expenses because the Consortium directed the Indenture Trustee to retain Moelis, as apparently permitted under the Indenture, and consented to the terms of such retention, including a $9 million fee. Although it appears that the Consortium directed the Indenture Trustee to hire Moelis, the present record indicates that a minority of the Noteholders never gave their affirmative consent to Moelis' retention. Indeed, it appears that the minority Noteholders may have been wholly unaware that Moelis had been retained by the Indenture Trustee, as the disclosure statement distributed in connection with confirmation of the Plan did not disclose any purported obligation to Moelis. The Noteholders were told they would be left "unimpaired," and that the Indenture Trustee' reasonable fees would be paid by the Debtors. *See Plan*, § 4.10. There was no disclosure that Moelis' unreasonable fees and expenses might become payable from the Note Proceeds.

Under the circumstances, it may be that claims can be "unimpaired," as required by § 4.10 of the Plan, and yet Noteholders receive less than a 100% recovery because the Consortium consented to such treatment or for some other reason.[5] It may be that lack of

[5] This Court expresses no opinion regarding Moelis' ability to demand payment of its fees and expenses from the Consortium, who appear to have consented to receive less than a full recovery on their Note claims when they signed the Engagement Letter. Such signatories were at least on notice that Moelis might seek to appropriate part of the Note Proceeds to pay its unreasonable fee and expenses. However, whether Moelis may force the Indenture Trustee to redirect that portion of the Note Proceeds due to non-Consortium Noteholders when such Noteholders may not have given their consent to such distribution and may not have had notice of the Engagement Letter, is a different question.

disclosure is irrelevant. However, the question whether "unimpaired" can be read to mean "impaired" with the consent of a third party and whether payments under a Plan can be withheld under the current circumstances requires interpretation of the Plan and the confirmation order in light of the relevant provisions of the Bankruptcy Code. Because interpretation, construction and enforcement of the Plan and confirmation order is implicated by the State Court Action, the State Court Action is a core proceeding "arising in" this bankruptcy case. *See e.g., In re Petrie,* 304 F.3d at 229-30; *see also, Mt. McKinley Ins. Co v. Corning Inc.*, 399 F.3d 436, 449 (2d Cir. 2005); *In re Portrait Corp.*, 406 B.R. at 641.

2. <u>"Related to" Jurisdiction</u>

Even assuming *arguendo* that the State Court Action is not within this Court's core jurisdiction, this Court nonetheless would have subject matter jurisdiction over the instant dispute as a case "related to" the Chapter 11 Cases. "Related to" jurisdiction exists if the action "in any way impacts upon the handling and administration of the bankrupt estate." *Celotex Corp. v. Edwards*, 514 U.S. at 308 n.6; *see also Parmalat Capital Finance Ltd. v. Bank of America Corp.*, Case No. 09-4302, 2011 WL 135810, at *3 (2d Cir. January 18, 2011) ("for the purposes of removal jurisdiction, a civil proceeding is 'related to' a title 11 case if the action's outcome might have any 'conceivable effect' on the bankrupt estate.") (*internal citations omitted*). Moelis asserts that this Court's jurisdiction is limited because the instant dispute involves only non-debtors, but the fact that the Reorganized Debtors are not parties to the State Court Action is not dispositive as to whether the Court has "related to" jurisdiction. *See Celotex Corp.* 514 U.S. at 308; *In re Petrie,* 304 F.3d at 229-30 (noting that core jurisdiction exists in a dispute between non-debtors over interpretation of the bankruptcy court's sale order). Moelis is seeking to enjoin the disbursement of payments from the bankruptcy estate to the Noteholders,

which clearly impacts upon the administration of the Reorganized Debtors' estates and the implementation of the Plan. Therefore, even if the Court does not have core "arising in" jurisdiction, "related to" jurisdiction exists.

3. <u>Post-Confirmation Jurisdiction</u>

Moelis finally asserts that post-confirmation disputes are not typically core or even "related to" bankruptcy proceedings because of the narrowed scope of a Bankruptcy Court's post-confirmation jurisdiction. *See Plaintiff's Reply* at pg. 8 (Dkt. No. 9). While Moelis is correct that a Bankruptcy Court's jurisdiction is narrower after confirmation of a chapter 11 plan than pre-confirmation, a Bankruptcy Court retains post-confirmation jurisdiction where: (i) the matter has a close nexus to the bankruptcy plan or proceeding, such as "when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan;" and (ii) the plan "provides for the retention of jurisdiction over the dispute." *See In re Kassover*, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006); *Rahl v. Bande*, 316 B.R. 127, 133 (S.D.N.Y. 2004), citing *In re Petrie*, 304 F.3d at 229; *In re General Media*, 335 B.R. 66, 73-74 (Bankr. S.D.N.Y. 2005).

As discussed above, the State Court Action has a close nexus to the Chapter 11 Cases. Moreover, despite Moelis' contention that the Plan does not provide for the retention of jurisdiction over the State Court Action, § 12 of the Plan specifically provides for the retention of jurisdiction by this Court over the issues at bar. Section 12.1 of the Plan provides that the "Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Chapter 11 Cases, the Plan and implementation of the Plan." Section 12.1(i) of the Plan further provides jurisdiction for the Bankruptcy Court to "hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the

Confirmation Order, [and] any transactions or payments contemplated thereby." Similarly broad retention of jurisdiction clauses have been found to fulfill the second prong of the test described above. *See In re Richard J.F. Navin*, 382 B.R. 6, 15-16 (E.D.N.Y. 2007) (finding that it was "beyond question" that the Bankruptcy Court exercised its jurisdiction appropriately where the plan provided the bankruptcy court with jurisdiction to "hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement or implementation of the plan."); *see also Rahl v. Bande*, 316 B.R. at 134; *Guccione v. Bell*, Case No. 06-492, 2006 WL 2032641, at *5 (S.D.N.Y. July 20, 2006).

Based on the foregoing, this Court has post-confirmation, subject matter jurisdiction over the State Court Action.

4. <u>Mandatory Abstention</u>

Moelis contends that even if this Court finds, as it does, that it has subject matter jurisdiction over the dispute, it should nonetheless abstain under mandatory abstention principles. 28 U.S.C. § 1334(c)(2) provides that

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, *related to a case under title 11 but not arising under title 11 or arising in a case under title 11*, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. (*emphasis added*)

Since the State Court Action is one "arising in" a bankruptcy case and within this Court's core jurisdiction, mandatory abstention under 28 U.S.C. § 1334(c)(2) is inapplicable on its own terms. *See In re Adelphia Commc'ns Corp.*, 285 B.R. 285 B.R. 127, 141 (Bankr. S.D.N.Y. 2002); *Winstar Holdings, LLC*, 2007 WL 4323003, at *5. Even if the matter were non-core, however, abstention would not be mandatory because of two additional conditions on which the

requirement of mandatory abstention is premised: (i) whether the action is one "based upon a state law claim" and (ii) whether the action is capable of being "timely adjudicated" in state court. 28 U.S.C. § 1334(c)(2); *In re Adelphia Commc'ns Corp.*, 285 B.R. at 141, citing *Renaissance Cosmetics, Inc. v. Development Specialists Inc.*, 277 B.R. 5, 12 (S.D.N.Y. 2002) (*internal citations omitted*).

A. *Action based on State Law Claims*

As discussed above, Moelis alleges that resolution of the State Court Action does not require reference to the Plan because the issues arise exclusively under State law and the Consortium agreed, in the Engagement Letter, to the distribution of a portion of Note proceeds to Moelis. These arguments are addressed above and for the reasons stated, interpretation of the Plan and the Bankruptcy Code are required, the State Court Action is not based solely on State law claims and mandatory abstention would not be appropriate.

B. *Timely Adjudication*

Moelis argues that its claims can be timely adjudicated in the State Court and that such adjudication "would [not] have any unfavorable effect on the administration of these cases." *See Plaintiff's Reply* at pg. 14. The crux of Moelis' argument appears to be that because the Note Proceeds have left the bankruptcy estate, the payment of Moelis from the Note Proceeds would not have any effect on the bankruptcy estate. This argument is misplaced.

The meaning of "timely adjudication" was recently addressed by the Second Circuit in *Parmalat Capital Finance Ltd. v. Bank of America Corp.*, Case No. 09-4302, 2011 WL 135810 (2d Cir. January 18, 2011). That Court noted that whether an action can be timely adjudicated in State court is a mixed question of fact and law. *See id*. at *4. The relevant inquiry focuses on how quickly a case can be adjudicated in State court and whether that pace is sufficiently swift.

Four factors are relevant to the consideration of timeliness, including: "(1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." *Id*. at *5. With regard to the first two factors, the Second Circuit has instructed that, "timeliness . . . is a case- and situation-specific inquiry" requiring inquiry into the "comparative speeds of adjudication in the federal and state forums." *Id.* at *5. This Court is required to "consider whether the litigants in a state proceeding need the state law claims to be quickly resolved as a result of the status of the ongoing bankruptcy proceeding." *Id* at *5.

The Indenture Trustee is currently withholding part of the Note Proceeds to cover all of Moelis' fees and expenses. The expeditious resolution of this matter is required in order to determine whether the Indenture Trustee must release the escrowed funds. The Indenture Trustee's action in withholding a substantial portion of the distribution due to Noteholders has already resulted in a motion by one Noteholder for an order seeking the release of the Withheld Funds. *See Magnetar's Cross Motion for the Release of Improperly Withheld Distributions* (Dkt. No. 6542). Expeditious resolution would inure to the benefit of all interested parties, whereas a transfer or remand to the State Court would unduly prolong the administration of the estate. *Parmalat Capital Finance Ltd.*, 2011 WL 135810 at *5, citing *In re Worldcom, Inc. Sec. Litig.*, 293 B.R. 308, 331 (S.D.N.Y.2003). Finally, the expertise required to resolve the dispute involves questions of bankruptcy law. This Court, rather than the State Court, has the most expertise in bankruptcy law issues generally and in interpreting the Plan specifically. *See Id*. ("Where the legal issues in a case are especially complex, the forum with the most expertise in

the relevant areas of law may well be expected to adjudicate the matter in a more timely fashion relative to the other forum.")

Because the above factors do not weigh in favor of mandatory abstention, abstention would not be mandated even if this Court had only non-core, "related to" jurisdiction.

5. Permissive Abstention & Equitable Remand

In addition to mandatory abstention, a bankruptcy court may abstain permissively from hearing a State court action pursuant to 28 U.S.C. § 1334(c)(1), *see In re Masterwear Corp.*, 241 B.R. 511 (Bankr. S.D.N.Y. 1999), or it may remand the matter to the State Court on "any equitable ground." *See* 28 U.S.C. § 1452(b); *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991). The courts in this district commonly cite seven "*Drexel*" factors[6] to determine whether a Court should exercise its equitable powers to remand, as well as twelve factors identified as being relevant to the issue of permissive abstention.[7] The parties have agreed that several factors, including the fourth, fifth, and eleventh permissive abstention factors, are not at issue. They largely disagree on the appropriate interpretation of the remaining factors.

It is clear on the present record that the crux of the dispute involves bankruptcy issues, and the Plan in particular. As discussed above, the Plan is implicated by the relief sought by

---

[6] The factors governing equitable remand include: "(1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants." *See Drexel Burnham Lambert Group, Inc.*, 130 B.R. at 407.

[7] The factors governing discretionary abstention include: (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties. *In re Masterwear Corp.*, 241 B.R. 511.

Moelis, rendering baseless Moelis' assertion that "[n]o bankruptcy issues are involved in the resolution" of its claims. *See Plaintiff's Memorandum of Law* at pg. 14. Proceedings before this Court are already pending to determine Moelis' reasonable fees, and under the circumstances this Court should also determine whether Moelis' unreasonable fees can also be charged against the Noteholders' Plan distribution.

**CONCLUSION**

For the reasons stated above, Moelis' Motion is denied.

IT IS SO ORDERED.

Dated: February 25, 2011
New York, New York

*/s/ Allan L. Gropper*
UNITED STATES BANKRUPTCY JUDGE